IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | MDL DOCKET No. 875 |
| LIABILITY LITIGATION (No.VI) | : | (MARDOC) |
| | : | |
| CERTAIN PLAINTIFFS | **FILED** | |
| | | CIVIL ACTION NO. |
| VS. | APR 1 8 2012 | 2:02-md-875 |
| | MICHAEL E. KUNZ, Clerk | |
| CERTAIN DEFENDANTS | By_____Dep. Clerk | |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, M.J.                                          April 18, 2012

On April 13, 2012, I heard argument on a series of discovery motions filed by

various defendants in the MARDOC asbestos cases. These motions have been filed with

respect to the cases in MARDOC Group 1, but relate to discovery issues that will apply to

the other groups as well.[1]

This docket consists of maritime cases filed by a single law firm[2] on behalf of

individuals who allege injury due to asbestos exposure during their work on commercial

ships. They were filed many years ago, and after being transferred into MDL 875

remained dormant for years before being reactivated. Being advised that the cases would

be reactivated and put on scheduling orders, plaintiffs' counsel undertook a process of

identifying the cases in which they planned to proceed, resulting in narrowing the docket

---

[1]By separate Order, the deadlines are being extended in all Groups except Group 7.

[2]The cases were filed by attorneys of the Jacques Admiralty Law Firm. Recently attorneys of Motley Rice LLC have also entered their appearances and are working together with the Jacques firm on behalf of all plaintiffs.

from over 50,000 cases to approximately 3,500 cases. Following conference with counsel, on October 4, 2011, Judge Robreno, together with the undersigned, entered Administrative Order 25 (MARDOC only) which set forth certain administrative rules for the cases as well as imposed certain initial discovery obligations. AO25 also assigned the duties of special master to Christopher Lyding, Esquire, to assist the court and parties in managing the cases. The cases were divided into seven groups of approximately 500 each, and on November 21, 2011, seven separate Case Management and Scheduling Orders were entered.

The scheduling orders, the wording of which was reached after lengthy consultation among counsel and Mr. Lyding, impose heavy obligations on the parties to complete the pretrial process preparing these cases for remand to their home district of the Northern District of Ohio within an approximate two-year period. Although the court acknowledges that the parties' discovery burdens are heavy, the parties have known for years that these cases were pending.

This memorandum is addressed to defense motions arguing that plaintiffs' responses to discovery requests are deficient in certain areas. For purposes of this discussion, plaintiffs' discovery efforts fall roughly into three categories; documents in plaintiffs' possession, authorizations to release records to allow defendants to gather documents, and answering interrogatories including the identification of fact witnesses

for deposition.  The pending motions address each category, and I address them separately here.

A.    Documents in Plaintiffs' Possession

First, to the extent they are in possession of medical records, plaintiffs have advised that they provided those records and continue to do so as they are received.  I previously clarified the timing for such records (Doc. 628), and conclude that plaintiffs are in compliance with their obligation to produce medical records.

Second, I previously addressed the question of plaintiffs' production of bankruptcy claim forms, and concluded that they were discoverable and that the parties should work on a method for obtaining them.  Doc. 721.  Plaintiffs assert that the claims should be obtained through the submission of authorization forms, and they have proposed a form for the purpose.  They further argue that it would be unduly burdensome and duplicative to also produce the claim forms from plaintiff counsel's own records, and for the first time at oral argument asserted that the claims are submitted electronically in such a way that a claim form is not generated.  Defendants assert that plaintiffs should be required to produce the claim forms in their possession, and also provide authorizations on a form of defendants' choosing.  Upon review of these arguments, I conclude that both discovery mechanisms should be used here.  I directed the production of bankruptcy claim forms in January, and no forms have yet been produced.  Plaintiffs shall produce claims submitted

on plaintiffs' behalf, and shall also provide executed authorization forms for all claims, excluding reference to settlement or paid amounts.

Third, plaintiffs are in possession of some Coast Guard discharge certificates, which identify each voyage a plaintiff was on, including ship, dates and the plaintiff's position or rating on the ship. The work summaries that plaintiffs have thus far provided are based on these certificates, although plaintiffs' counsel represents that they may no longer be in possession of complete records of the actual certificates due to passage of time (decades in most cases), deterioration of the documents and also because they may have returned the original certificates at a client's request without retaining a copy. Defendants seeks production of the discharge certificates in plaintiff counsel's possession as well as from the Coast Guard through authorizations. Plaintiffs maintain that these documents should be obtained through the authorization process, and that it would be burdensome for them to produce them now as well as duplicative of those that can be obtained directly from the Coast Guard. I again conclude that both methods of discovery should be used here. These are highly relevant records, and there is no guarantee that the Coast Guard records will be any more complete than plaintiffs'. Plaintiffs should have anticipated that the records would need to be produced in discovery, as they may be the only direct proof that a plaintiff was on a given ship.

4

B.    Authorizations

I have already addressed certain authorizations in the preceding discussion, but there are additional authorizations at issue. In a previous order I denied defendants' request that I compel plaintiffs to use defendants' third-party vendor and forms for collecting plaintiffs' medical, tax, military and personnel records. Doc. 628 ¶ 2. However, defendants represent that certain of the forms plaintiffs provided, in particular Internal Revenue and Social Security forms, have been rejected because they were out of date. I am loathe to compel plaintiffs to repeat the process, particularly because their efforts to obtain these authorizations were made promptly to comply with AO25 at an early stage of this process. However, I see no alternative as these records must be obtained, and will therefore direct that usable authorization forms be provided.

C.    Discovery Responses

1.    Verifications

Defendants have moved to compel plaintiffs to provide verifications to their discovery responses, and plaintiffs respond that they are doing their best to obtain the verifications as quickly as they can. Plaintiffs will be required to complete the process promptly, and in the future verifications will have to be provided within the same deadline as for the discovery responses themselves.

2.    Identification of products and witnesses

The most complex discovery dispute concerns the adequacy of plaintiffs'

responses to interrogatories requesting the identification of fact witnesses, and the

depositions of fact witnesses. Plaintiffs' interrogatory responses have not identified any

witnesses, other than by referring defendants to their document extranet. That is,

plaintiffs have opted to post all their discovery responses to an electronic database,

accessed through the internet, which each defendant enters using a unique username and

password. For each discovery group, there are a number of links on the extranet, for

example to responses to discovery, exhibits, death certificates and expert reports. For

each plaintiff, there is a link for the IDF (initial data form) provided at the outset of the

discovery schedule, which contains each plaintiff's sailing history, including for each

voyage the employer/ship owner, dates of the voyage, name of ship and rating.

There is also a link entitled "Co-worker Vessel Service Histories," where one

begins to search for potential co-worker witnesses. By selecting a given plaintiff, one

finds a link to that plaintiff's vessel service history and then also links for the vessel

service history of all witnesses who shared an overlapping period of service on a ship

with that plaintiff.[3] The number of co-workers is estimated at 14,000. For certain co-

workers, there are also links for exposure affidavits. These affidavits provide limited

information relating to rating and vessels and in some cases to products, but no details as

_____

[3]Plaintiffs' counsel states that they represent every single co-worker witness.

6

to what the co-worker observed or what testimony he could provide.  As described by plaintiffs' counsel, these affidavits are used for purposes of submission to bankruptcy trusts.

The process of extracting information from the extranet, according to defendants, is quite cumbersome, involving hours of tedious "drilling down" through the vessel histories.  This is particularly true for plaintiffs who served on many ships, which is typical as these merchant sailors may have made hundreds of different voyages.  It is also particularly true for defendants who owned or are responsible for many ships.  Moreover, defendants complain that plaintiffs have the ability to organize the information to easily list each relevant co-worker for each plaintiff but have refused to do so.  At the hearing, plaintiffs' counsel did not dispute that they had the ability to do this, although insisted that the information is on decades-old databases (punch-card format in some cases) making it at least as cumbersome for them as for defendants to sort the information as requested.

The process is also far from perfect.  Specifically, the vessel service history lists do not actually identify a witness who can speak about a plaintiff or even a person in the plaintiff's position; all they identify is someone who was on the ship during at least one day when the plaintiff was on the ship.  Defendants argue that their experience thus far shows that the coworkers they identify through this laborious process have turned out to have no useful information.  This was shown by the process of noticing depositions.  For

7

example, counsel for one group of shipowner defendants went through the above-described process to develop a list of co-workers for deposition.  Upon receiving the deposition notice, plaintiffs went through the list and eliminated many of them upon learning that they were deceased, infirm or for some other reason unavailable.  Plaintiffs then identified those defendants about whom the witness would offer relevant testimony, by serving a cross-notice of deposition.[4]  This is the very list that the defendants insist should be provided to them at the outset.  The parties debate the relative usefulness of the information gleaned from the few depositions that did go forward.

The manufacturing defendants argue that the process is even more challenging for them.  Unlike the shipowners, who at least know which plaintiffs and co-workers are alleged to have served on their ships, the manufacturing defendants have been unable to learn through the vessel service history lists anything about how plaintiffs were allegedly exposed to their products on the ships.  Plaintiffs have offered no answer to this question, other than to point defendants to their own discovery obligations and to exposure affidavits to the extent they exist.

Defendants' argument rests in part on the wording of paragraphs 9 and 10 of the Case Management and Scheduling Orders.  As previously noted, the specific language of these orders was reached after lengthy consultation among counsel and Mr. Lyding.

---

[4]I quashed these cross notices on the ground that they gave insufficient time for other parties to prepare.

These paragraphs appear in the section describing the parties' fact discovery obligations.
Paragraph 9 states that "All deposition notices shall include . . . the plaintiff's/injured
party's list of employers, list of vessels aboard which the injured party served as well as
full and complete notice of all plaintiffs and products a deponent is prepared to address."
Paragraph 10 states that "Plaintiffs shall provide to Defendants the names of the cases,
vessels and products about which a co-worker witness will testify." The thrust of
plaintiffs' position is that they do not need to provide the information set forth in
paragraph 10 until they receive a deposition notice. This interpretation is not based on the
wording of the Orders, nor is it reasonable. Plaintiffs' obligations under paragraph 10 are
affirmative, and do not rest on any prior action or query from defendants.

Plaintiffs use of the extranet is certainly designed to handle volumes of
information in an efficient manner. However, the question is whether plaintiffs have
satisfied their discovery obligations through use of the extranet. Although plaintiffs do
not rely on it, Rule 33 provides a helpful analogy here. That Rule gives a party the option
of producing business records as an alternative to answering an interrogatory in the
following circumstances:

> If the answer to an interrogatory may be determined by
> examining, auditing, compiling, abstracting, or summarizing a
> party's business records (including electronically stored
> information), and if the burden of deriving or ascertaining the
> answer will be substantially the same for either party, the
> responding party may answer by:
>> (1) specifying the records that must be reviewed, in
>> sufficient detail to enable the interrogating party to

9

> locate and identify them as readily as the responding
> party could; and
> (2) giving the interrogating party a reasonable
> opportunity to examine and audit the records and to
> make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). The records at issue are not business records, and thus by its terms

Rule 33 does not apply. However, the notions of weighing relative burdens and

specificying records to enable the other party to locate the relevant information are

helpful here. Measured by this analogy, plaintiffs' production falls short. Although

plaintiffs protest that the burden on them is equal to the burden on the defendants to sift

through the vessel service histories and other documents to identify witnesses, that simply

cannot be the case as the information originated with them. Plaintiffs created these

documents as a way to bring their cases, and can fairly be expected to make use of them

to assist the defendants in identifying and investigating the evidence to be offered against

them. Additionally, plaintiffs are obliged to have and to share the type of information

contained in paragraph 10 of the scheduling orders. When dealing with 14,000 potential

witnesses, many of whom are now deceased or infirm, and all of whom are or were

represented by plaintiffs' counsel, it is not reasonable to expect defendants to identify the

witnesses against them nor the likely testimony that will be provided. That burden rests

with the plaintiffs here.

An appropriate Order follows.

10